

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed July 14, 2015

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| STEVEN WALKER CRUMP and | § | CASE NO. 14-50224-RLJ-7 |
| MELISSA ANN CRUMP, | § | |
| | § | |
| DEBTORS. | § | |

### MEMORANDUM OPINION

This matter stems from the trustee's objections to exemption claims by the debtors, Steven and Melissa Crump. The Crumps filed for bankruptcy on October 6, 2014; they filed their *Schedule C - Property Claimed as Exempt* on October 17, 2014. On December 12, 2014, the trustee filed the *Trustee's Objections to Property Claimed as Exempt* [Doc. No. 33]. The Crumps filed their reply, styled *Response to Trustee's Objections to Property Claimed as Exempt* [Doc. No. 35], on January 5, 2015.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

1

**Background**

Max Tarbox, the chapter 7 trustee (Trustee), objects to the following exemptions claimed by the Crumps: (1) a homestead claim to a 160-acre tract of rural property that is not contiguous to a 4.28-acre tract where they actually reside; (2) $17,500 in rent proceeds paid in advance under a saltwater disposal lease on the 160-acre tract; and (3) certain tools and equipment used for farming (the "Farm Implements").[1]

The parties stipulated to most of the relevant facts. *Agreed Stipulations for the Hearing on Trustee's Objections to Property Claimed as Exempt* [Doc. No. 46]. The Crumps filed for bankruptcy on October 6, 2014. They claim as their homestead two non-contiguous tracts located in Yoakum County, Texas: the tract in which they reside consists of 4.28 acres, known as Lot 1, Oasis, Sub Sec 334, Block D, Abstract 1628 ("Tract 1"); the other tract, which consists of 160 acres, is known as the SW/4 of Section 580, Block D, Abstract 476 ("Tract 2"). Tract 1 and Tract 2 are about 9 miles apart. The Crumps purchased Tract 2—the surface estate only—and started farming it in 1992; at such time, they also intended to build a house on Tract 2. In 1997, however, they purchased Tract 1, which included a house, and moved in with their children; the Crumps still live there. They farmed Tract 2 until 2004, when they were forced to discontinue their farming operations after two unsuccessful attempts to reorganize. Unable to continue farming, Mr. Crump obtained employment in the oil and gas industry, where he is still employed.

After they stopped farming, the Crumps leased Tract 2 on a crop share basis. On February 7, 2011, Mr. Crump entered into a lease with Joshua Bell ("Property Lease"). Debtors' Ex. 5. Under the Property Lease, Bell agreed to cultivate Tract 2 for a period of five years. The

---

[1] The Farm Implements consist of the following items: knife slide, John Deere planter, Hamby toolbar, John Deere toolbar, Tye drill, John Deere rotary hoe, sandfighter, Krause disc, onion blade, Orthman cultivator, packer, two toolbars, and a soil packer. The estimated value of these items is $16,050.

lease was to "continue from year to year thereafter unless *either party* gives notice on or before September 1 of any year that the lease shall not be effective for the following crop year." *Id.* (emphasis added). Though the Property Lease was to last five years, the terms of the lease and the parties' testimony show that each party had the right to terminate it at the end of every year. The amount of rent was deduced based on the "market values of cash leases in the area on one hundred and twenty acres (120) of irrigated land." *Id.*

In addition to the Property Lease, the Crumps and Bell agreed that Bell would finance the purchase of an irrigation system for Tract 2, which the Crumps would, in effect, purchase from Bell by crediting Bell's payments on the irrigation system against the Property Lease. (At the end of the five-year term of the Property Lease, Bell will sell the irrigation system to the Crumps for one dollar and the Crumps will acquire title to the system. If the lease ends prior to the five-year term, Bell then remains the owner of the irrigation system.[2])

The Crumps entered into a second lease agreement involving Tract 2 on April 18, 2012, with Walsh Petroleum, Inc. By this lease, the Crumps leased a 2.00-acre tract and 2.066-acre tract in the southwest corner of Tract 2 to Walsh Petroleum to use for disposal of saltwater waste from its operations ("Saltwater Disposal Lease"). Debtors' Ex. 6. The 2.00-acre tract contains an abandoned well in which the saltwater is disposed, and the 2.066-acre tract serves as the "[d]isposal [f]acilities." *Id.* The monthly rent is $2,500 and the term of the lease is thirty years. *Id.* In addition, the Crumps receive compensation for any surface damages on the property. *Id.* In early October 2014, the Crumps received a lump-sum rent advancement from Walsh Petroleum for the months of October 2014 through April 2015, of $17,500. The Crumps deposited the advance payment in their account at West Texas National Bank (WTNB). The

---

[2] The Crumps and Bell do not have a written agreement, but they both confirmed the arrangement.

rental payments from the Property Lease and Saltwater Disposal Lease obviously supplement the Crumps' income.

On August 28, 2013, a default judgment was granted against Steven Crump and in favor of WT-NM Atlantic Federal Credit Union in the amount of $18,991.18. Debtors' Ex. 8. The Crumps were also served with papers informing them that Tract 2 would be subject of a public auction on October 7, 2014. *Id.* In an effort to protect Tract 2, the Crumps, following unsound advice from their counsel, gifted Tract 2 to their children, Hannah and Merrit Crump, on July 23, 2014. Debtors' Ex. 9. The stated consideration for the transfer was "Love of, and affection for, Grantee." *Id.* Although the Crumps transferred the property to their children, they continued to receive the payments from the Property Lease and the Saltwater Disposal Lease. The children transferred Tract 2 back to the Crumps on October 2, 2014, the consideration again being "Love of, and affection for, Grantee." Debtors' Ex. 10. The Crumps filed for bankruptcy the day before the scheduled public auction of Tract 2.

## Discussion

Upon filing for bankruptcy, the Crumps elected to claim exemptions provided under Texas law. *See* 11 U.S.C. § 522(b)(1) & (3); *Norra v. Harris Cnty, Tex. (In re Norra)*, 421 B.R. 782, 788–89 (Bankr. S.D. Tex. 2009). The bases for the Trustee's objections are as follows: to Tract 2 on the basis that it is not used as the Crumps' homestead; to the Saltwater Disposal Lease and the funds obtained from the lease—and presently in the WTNB account—on the basis that they are not proceeds from a homestead; and to the Farm Implements on the ground that the items are not currently, and were not at the time of filing bankruptcy, used for farming. The Court is guided by Texas law in determining whether the Crumps' claimed exemptions are proper. *See Norra*, 421 B.R. at 789.

**A. Whether Tract 2 Qualifies as Debtors' Homestead**

The Trustee argues that Tract 2 does not qualify as an exempt homestead because it is subject to two leases, and because the Crumps transferred the property to their children. The Crumps respond that Tract 2 was a valid homestead at the time they purchased their home on Tract 1 and, as such, could only lose its homestead status by abandonment, death, or alienation.

1. Homestead

Under Texas law, a homestead can be either urban or rural. Tex. Const. art. XVI, § 51; *Bradley v. Pac. Sw. Bank, FSB (In re Bradley)*, 960 F.2d 502, 506 (5th Cir. 1992). The parties agree that Tracts 1 and 2 are rural property. *See* Tex. Prop. Code § 41.002. In Texas, a family is entitled to a rural homestead consisting of "not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon." Tex. Const. art. XVI, § 51; Tex. Prop. Code § 41.002(b)(1). The party seeking the homestead protection has the initial burden of showing that the property qualifies as homestead. *Bradley*, 960 F.2d at 507 (citing *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.)); *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied). Once the proponent demonstrates that the property is homestead, the burden shifts to the objecting party to prove that the homestead has ceased to exist. *Bradley*, 960 F.2d at 507; *Wilcox*, 103 S.W.3d at 472 ("a homestead is presumed to exist until its termination is proved" (internal quotation marks and citations omitted)). Homestead issues are fact intensive; the Court liberally construes the constitutional and statutory provisions in favor of protecting the homestead. *See Bradley*, 960 F.2d at 507.

For a noncontiguous tract of land to qualify as rural homestead, "the uninhabited property must be used in connection with the home tract for the comfort, convenience, or support of the

5

family." *In re Baker*, 307 B.R. 860, 863 (Bankr. N.D. Tex. 2003) (citing *In re Webb*, 263 B.R. 788, 791–92 (Bankr. W.D. Tex. 2001); *Cocke v. Conquest*, 120 Tex. 43, 35 S.W.2d 673, 678 (1931); *Brooks v. Chatham*, 57 Tex. 31, 1882 WL 9451, *2 (1882)); *see In re Schott*, 449 B.R. 697, 702 (Bankr. W.D. Tex. 2011). "'[S]upport' . . . requires a showing of some nexus between the residence tract and the noncontiguous parcel." *In re Palmer*, 391 B.R. 386, 391 (Bankr. E.D. Tex. 2008) (citation omitted). Manifesting the intent to claim land as a homestead is critical. *Id.* (citing *Chatham*, 1882 WL 9451 at *2–3).

Tract 2 was part of the Crumps' homestead at the time Tract 1 was purchased, as the Crumps demonstrated the requisite intent and overt acts qualifying the property as homestead. The act of farming the uninhabited land is a sufficient nexus to the inhabited property to constitute support of the family. *PaineWebber, Inc. v. Murray*, 260 B.R. 815, 830 (E.D. Tex. 2001) (citing *Autry v. Reasor*, 102 Tex. 123, 113 S.W. 748, 748 (1908)). The Crumps began farming Tract 2 as part of their farming operations in 1992, and continued to farm Tract 2 up to and after they acquired their present residence in 1997. And, in their prior bankruptcy case in 2000, they claimed Tracts 1 and 2 as their rural homestead, a claim that was not disputed.

2. Abandonment

As Tract 2 was properly designated as part of the Crumps' rural homestead, the Court examines whether the Trustee proved that Tract 2 lost its homestead status. *In re Perry*, 345 F.3d 303, 319 (5th Cir. 2003) ("the party opposing the homestead claim … carries the burden"); *Bradley*, 960 F.2d at 507. "The only way for property to lose its homestead, after it has been dedicated as a homestead, is by death, abandonment or alienation." *Garrard v. Henderson*, 209 S.W.2d 225, 229 (Tex. Civ. App.—Dallas 1948, no writ); *see Baker*, 307 B.R. at 864 ("A homestead in a particular tract of land, once it is vested by use, is presumed to continue until

6

there is proof of abandonment.") (citations omitted); *Drake Interiors, L.L.C. v. Thomas*, 433 S.W.3d 841, 847 (Tex. App.—Houston [14th Dist.] 2014, no. pet.). The Trustee argues that the Crumps abandoned Tract 2's homestead status by entering into the Property Lease and the Saltwater Disposal Lease.

Though in Texas the temporary renting of the homestead is permitted, a lease may be sufficiently permanent to cause an abandonment. *Perry*, 345 F.3d at 318–19 (noting that the Texas Constitution and Property Code allow for temporary renting of homestead); *Norra*, 421 B.R. at 794; *Hollifield v. Hilton*, 515 S.W.2d 717, 721 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.). "Abandonment of homestead is always a question of fact on which both use and intent are relevant." *Hollifield*, 515 S.W.2d at 721 (citing 28 Tex. Jur. 2d 536–45, 'Homesteads,' Secs. 130–34); *see Perry*, 345 F.3d at 319 (citing *Carver v. Gray*, 140 S.W.2d 227, 231 (Tex. Civ. App.—Amarillo 1940)).

To determine whether the renting of the homestead is temporary or permanent, the Court is guided by the Fifth Circuit's *Perry* decision. In *Perry*, the court began its analysis by identifying "over what portions of property [the owners] released possession and control." *Perry*, 345 F.3d at 319 (citing *Hollifield*, 515 S.W.2d 717). Next, "the court should consider [the owner's] intent with respect to that portion of the property." *Id.* (citing *Gonzalez v. Guajardo de Gonzalez*, 541 S.W.2d 865, 867 (Tex. Civ. App.—Waco 1976, no writ)). If the court does not find that the owner had the intent to resume control over the property, then the property is considered abandoned and loses its homestead character. *Id.* (citing *Hollifield*, 515 S.W.2d at 721); *see also R.B. Spencer & Co. v. Green*, 203 S.W.2d 957, 959 (Tex. Civ. App.—El Paso 1947, no writ).

Though the Trustee cites to various cases, *In re Norra* best addresses the issue at hand—whether the renting of a portion of the rural homestead warrants a finding of abandonment. 421 B.R. at 792–93. In *Norra*, the debtor claimed two mobile home parks as her homestead property. *Id*. at 785. The debtor resided in one of the parks and rented out the rest of the units there. *Id.* The primary purpose of the other mobile home park was to generate rental income and to obtain spare parts for mobile home units. *Id.* at 792. Noting that "*separate* land that is devoted *primarily to generating income* … is not used principally for home purposes," the court denied homestead protection to the park not resided on by the debtor. *Id.* at 791–92 (quoting *Perry*, 345 F.3d at 318 n.22) (alteration in original).

With respect to the park where the debtor resided, the court first noted that by residing at the property, the debtor had met the initial burden of demonstrating that the land was her homestead. *Id.* at 792. The court then shifted its focus to address whether the debtor had abandoned the homestead character of certain mobile homes by renting them. *Id.* at 793. The court applied the *Perry* test and relied on *Hollifield* to hold that the debtor intended to resume control over the rented mobile homes. *Id.* at 797. In doing so, the court first noted that the debtor "only temporarily released possession and control of various mobile homes when the homes [we]re actually occupied by tenants"; tenants rented the units on a month-to-month basis. *Id.* The court interpreted these facts as showing that the debtor only gave up possession and control "temporarily." *Id.* The court next found that the debtor intended to resume control of the rented units because the improvements consisted of a septic tank, sewage system, and shared road, and that the mobile homes could be converted to a different use "with minimal effort." *Id.* at 798 (quoting *Perry*, 345 F.3d at 319).

8

Mindful of *Norra*'s application of *Perry* and *Hollifield*, the Court finds that the dispositive factor in the *Perry* test is the owner's intent to resume control of the property. *See Perry*, 345 F.3d at 319. Given that Tract 2 was subject to two lease agreements, the Court will separately analyze the effect of each lease on the homestead claim.

Under the Property Lease, the Crumps gave up possession and control of the entirety of Tract 2 to Bell. The lease is stated to be a five-year lease, but, actually, either party can terminate the lease at the end of any year with timely notice. Though they relinquished possession of Tract 2, the Crumps control the way in which Tract 2 is to be used by Bell—"to cultivate the Farm during the term hereof in an efficient and economic manner . . . ." Debtors' Ex. 5. The Crumps argue that they intend to resume control of Tract 2 for farming once they are able to obtain adequate financing. Bell testified that it was understood that the lease would end once the Crumps acquired financing. But wishful thinking alone is not enough to establish the Crumps' intent to resume possession and control of the farm. There is evidence of the Crumps' intent engrained in other facts. The Crumps never altered the nature of the property nor added any structures and, other than the Saltwater Disposal Lease, preserved it for agricultural use. The Crumps also made arrangements to purchase an irrigation system for Tract 2 through Bell. And, perhaps more telling, the Crumps kept the Farm Implements that are at issue here during their farming hiatus. Such facts demonstrate the Crumps' desire to resume possession and control of that part of Tract 2 under the Property Lease.

The same cannot be said for the portions of Tract 2 rented under the Saltwater Disposal Lease. Employing the *Perry* test, the Court finds that these portions were permanently rented. Under the Saltwater Disposal Lease, the Crumps rented two portions of land in the southwest corner of Tract 2 to be used for the disposal of saltwater. In doing so, they gave up possession

9

and control by renting the land for the "purpose of operating the Disposal Well for the disposal of Saltwater." Debtors' Ex. 6. Furthermore, Walsh Petroleum has "the right to build, install and maintain . . . storage tanks, pumps and other machinery and equipment . . . that is reasonably necessary to transport, store, and dispose of Saltwater into such formation(s)." *Id.* The facts do not support a finding that the Crumps intend to resume control of these portions of land. In particular, the parcel in which the well sits is not being used for agricultural reasons. Rather, these two parcels are rented out for a monthly rate of $2,500 and their nature is being changed to accommodate the business of the lessee. More telling of the Crumps' lack of intent to resume control of the leased land is the lengthy thirty-year lease term. Unlike the Property Lease, which gives the lessor and lessee the right to terminate the lease, the Saltwater Disposal Lease only allows the lessee, Walsh Petroleum, the right to surrender the lease. *Id.*

The Crumps argue that the Saltwater Disposal Lease is akin to a mineral lease, and submit that this Court's decision in *In re Poer* found that a mineral lease and any royalties, bonus payments, or oil payments to be derived from the lease were all "'real property' . . . held by this court to be exempt for purposes of a debtor's homestead exemption." Debtors' Brief in Support ¶ 22 (citing *In re Poer*, 76 B.R. 98, 99 (Bankr. N.D. Tex. 1987)). The Crumps' reliance on *Poer* is misplaced. First, the court in *Poer* did *not* sustain the debtor's exemption claim to a mineral lease as part of debtor's homestead. *Poer* is a very different case. *Poer* concerned a claim of a homestead exemption to a four-acre tract, where the debtor, Poer, lived, and his undivided one-half interest in minerals from an adjacent 328.02-acre tract. Poer did not own the surface estate of the adjoining tract and had not leased any portion of the mineral estate. *Poer* is not applicable.

The Crumps make the alternative but somewhat similar argument that the Saltwater Disposal Lease is like an "easement" or a "profit a prendre" that is, along with the $17,500 of

advance payments, rightfully subject of their exemption claim. This is simply another attempt to recast the Saltwater Disposal Lease as something different from what it is. And it does not aid the analysis. The Crumps' interest that was conveyed under the Saltwater Disposal Lease was, as explained above, abandoned.

3. Alienation

The Trustee also argues that Tract 2 lost its homestead by alienation. By deeding the property to their children, the Crumps engaged in a sham transaction that resulted in the alienation of their homestead, the Trustee submits. The Crumps reply that Texas homestead law protects "saints and sinners" alike and that the homestead protection stands despite the sham transaction. *Garrard*, 209 S.W.2d at 230.

The facts of this case are similar to those in *Smith v. Moody (In re Moody)*. 862 F.2d 1194 (5th Cir. 1989). In *Moody*, the Fifth Circuit upheld the homestead of a debtor who engaged in a series of conveyances of homestead property with the intent to shield the homestead from the reach of creditors. 862 F.2d at 1195–96. No real consideration had been paid for the conveyances, and the court found that such sham transactions displayed the debtor's lack of intent to alienate the property. *Id.* at 1199. The court also held that a "conveyance of a homestead that is not intended to pass title and that has been simulated to shield the homestead from creditors is void." *Id.* (citing *Hughes v. Parmer*, 164 S.W.2d 576, 577 (Tex. Civ. App.—Austin 1942, no writ)). Here, the Crumps transferred Tract 2 to their children by gift deed, and the children transferred the property back by gift deed within three months. Like in *Moody*, no real consideration had been given. The Crumps did not intend to pass title of the property to their children, and the evidence shows that the reason for the transaction was to protect their homestead. There was no alienation of Tract 2.

### B. Whether the WTNB Funds Are Exempt

The Trustee objects to the funds received by the Crumps from the Saltwater Disposal Lease and deposited in the WTNB checking account. As set forth above, the land rented by the Crumps under the Saltwater Disposal Lease lost its homestead character. The proceeds from the Saltwater Disposal Lease are not exempt under Texas law. Even if the renting was temporary, and the homestead not abandoned, Texas law is clear in that it protects the proceeds of the *sale* of a homestead. Tex. Prop. Code § 41.001(c). Proceeds derived from rent of the homestead are not exempt from the reach of creditors. *West v. U.S. Fidelity & Guar. Co.*, 298 S.W. 652, 653 (Tex. Civ. App.—Amarillo 1927); *Hinzie v. Moody*, 13 Tex. Civ. App. 193, 35 S.W. 832, 834 (1896, writ denied).

### C. Whether the Farm Implements Are Exempt

The final objection concerns the Crumps' Farm Implements. The Crumps claimed their Farm Implements exempt under §§ 42.001(a)(1) and 42.002(a)(3) of the Texas Property Code. These provisions exempt "farming or ranching vehicles and implements" up to an aggregate amount of $60,000.00. *See* Tex. Prop. Code. §§ 42.001(a)(1), 42.002(a)(3). The Trustee objects to this claimed exemption because, quite simply, the Crumps had long since stopped farming. The Crumps raise their equally basic response: they submit the present actual use of the Farm Implements in a farming operation is not a condition to their exempt status under § 42.002(a)(3).

As with the homestead exemption, Texas courts construe personal property exemptions liberally. *In re Stokesberry*, No. 13-31714, 2013 WL 4806426, *2 (Bankr. S.D. Tex. Sept. 5, 2013) (citing *Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1068 (5th Cir. 2008); *Hickman v. Hickman*, 149 Tex. 439, 234 S.W.2d 410, 414 (1950)). Though there is little case law

interpreting § 42.002(a)(3), the *PaineWebber v. Murray* court found "no reason to reject a literal interpretation of [§ 42.002(a)(3)]." 260 B.R. at 832. Here, the Crumps compare § 42.002(a)(3), upon which their exemption claim is made, with § 42.002(a)(4), which exempts "tools … and motor vehicles used in a trade or profession." Unlike subsection (a)(3), subsection (a)(4) qualifies the exemption by how the property is used. Mr. Crump testified that the Farm Implements have not been used since he stopped farming in 2004. Their nonuse, however, does not affect their character as farming implements; as farming implements, they satisfy the statutory requirement. The Trustee's objection to the Crumps' exemption for their Farm Implements is denied.

### Conclusion

Texas law favors homestead rights; and the courts so construe the law when the facts raise the difficult question of whether a homestead has been lost. It is not without some irony that the Crumps jeopardized their full homestead rights because they were financially unable to continue farming. But the Property Lease did not cause an abandonment of their homestead rights. To the extent there is no overlap of the land covered by the Property Lease and the Saltwater Disposal Lease, the Crumps' full homestead claim to Tract 2 survives. The extended term and the nature of the Saltwater Disposal Lease is not consistent with homestead purposes, however. As a result, the Crumps lost their homestead rights to the land covered by the lease and the proceeds resulting from it. The Farm Implements are explicitly covered by the allowable exemptions at § 42.002(a)(3) of the Texas Property Code.

### End of Memorandum Opinion ###